2-15-0186. People in the state of Illinois thank you for the opportunity to be with Richard J. Thomas, Superintendent of Colorado. On behalf of the Superintendent of Colorado, Mr. Donald Ramsey. On behalf of the District Attorney, Mr. Edward Ramsey, Senator. Counsel, Mr. Ramsell. Thank you. Good morning, your honors, and may it please the court. My name is Donald Ramsell, R-A-M-S-E-L-L. I'm the attorney for Richard Thomas. Mr. Ramsell, I'd like to do some business relative to a motion to cite official authority. Did you receive notice of that? Yes, I did. Any objection? No. Very well. Do you happen to know whether or not the state of New Jersey has a similar predicate or requirements relative to Rule 23s and how they're supposed to be cited? I did have an opportunity to have a conversation with a very learned counsel from New Jersey the other day. And as he explained to me, the rule under which that case was produced, I don't want to use the word published, produced states that the opinion can be offered to a judge for their informational purposes, but it is not precedential. So it is something that a judge can read to be more informed, but it does not constitute precedent and is non-binding to that extent. However, the predicate is that before the case can be offered to a judge for that tribunal's purpose, it has to be noticed to opposing counsel, and opposing counsel has to offer up any other relevant opinions. I do not know if my opposing counsel here did, in fact, do research to ensure that all the other relevant opinions were offered up to this tribunal, but be that as it may. I believe the language was all other contrary decisions or opinions. Actually, I believe they modified the term contrary because then attorneys were saying, these cases that we did not give you, we do not feel were contrary, but simply distinguishable. So they changed it to, I believe, relevant to ensure that ethically lawyers were not hiding the ball. Did you get a complete copy of the case? Because the one I received only had one page. I do not know because I personally pulled it myself off of Westlaw. I did not accept the opposing counsel's copy. Since it is cited as additional authority and you did not relate to it in your reply because it was not in the original appellee's brief, would you like to make any comment about it now? The interesting thing is I happen to have some personal knowledge of New Jersey DWI law as a result of activities I was recently involved in. Because in New Jersey, the New Jersey Supreme Court just about a month ago held that a defendant in a DWI case is not entitled to a jury trial. Because under New Jersey law, a DWI is a non-criminal offense. In fact, under New Jersey law, you could have 10 DUIs and the maximum sentence you could ever receive would be 180 days of jail. Therefore, the constitutional protection of a jury trial is not applicable. So you're saying that when you said 180 days, you're talking as if the New Jersey Supreme Court considered it to be a contempt? Well, the maximum sentence one can receive under New Jersey DWI law is up to 180 days of jail. The United States Supreme Court only guarantees a jury trial for offenses where the potential penalty is greater than that. And equally true, this New Jersey case is distinguishable on a wealth of bases. Number one, they have a statute that specifically says that the element of a voluntary act does not apply to DWI cases. Number two, they have a higher Supreme Court, prior to ours being decided, indicated that the protections of the criminal code don't apply to DWI cases in many respects because they are considered traffic. We don't actually have something called traffic. We have civil or criminal. So basically you're objecting because of the differences in the law, DWI law, DUI law here between New Jersey and Illinois? I'm just saying it's really not applicable. And I would note that what was interesting is in the New Jersey case, besides factually being substantially different, the defendant in that case had acknowledged that his bottle of pills had the FDA warning that was added in 2013, which my client did not have the benefit of. That apparently had a great, it was one reason there. But they also described the, they used the phrase, the defense of Actus Reis in their opinion. I found that to be intellectually amusing given the fact that it's not a defense. The lack of Actus Reis is a, Actus Reis is an element. It's not a defense. But be that as it may, it stands for whatever its value is or worth. Equally true, I think recently our courts, even the second district, has suggested that we don't look at out-of-state cases for any value if our own state has already rendered opinions that deal with the subject at hand, which returns me, I guess, to my argument here. We have a Supreme Court case, People v. Grant, that specifically says that every criminal offense... We're getting a little bit ahead of ourselves. Mr. Marshall, will you reset the clock because I don't think that this time should be credited against this argument since it related to court business. You may proceed with your argument. Well then, if I could reset. Judge, judges, this is an interesting case. Mr. Richard Thomas, 51 years of age at the time of the offense, took a prescription according to what he was told by his physician and took this little pill, went to sleep, and woke up in the hospital charged with a DUI. Now, that is the extent of Richard Thomas' participation in the activities of that evening from the point that he went to sleep to the point where he woke up. What about the alcohol he drank that evening, the bottle of wine? Yes, he did drink alcohol earlier. I believe, was it a whole bottle of wine? The size of the bottle was undefined. I just went to a place where a bottle is actually about the size of two shots and it's sold separately. But I don't know what the size of the bottle was. But yes, the container was described as a bottle. Mr. Ramsey, let me ask you a fundamental threshold question. Is it your position that a voluntary act is a material element of every criminal offense in Illinois? It's my position. It's the legislature's position. It's the Supreme Court of Illinois' position. So I feel confident that I'm not creating out of whole cloth. Isn't that part of the statute? The statute says so, yes. It's not in the same section as the other mental elements, but it is in the statute, correct? 720 ILCS 5-4-1, material element of every offense. Does the trial judge in this case recognize that? I know. That the judge acknowledged in his ruling at page 971, quote, the defense's argument is not the mental state here. The defense's argument is with regard to the voluntariness of the act. Page 971. I cite that because it seems to be lost in some confusion about obfuscating mental state and voluntary acts. Well, maybe that stems from people versus Teshnet. There seems to be some confusion about the scope of Teshnet. How do you distinguish this situation from Teshnet? Well, the trial judge was Charlie Spencer, be that as it may. It's also a 1979 case. During the trial itself, the argument was made about the voluntariness of the act. But on appeal in Teshnet, the sole issue was recast as the mental state. So the issue on appeal was the mental state, which is the apple to my orange. So I don't believe it has any value there. I think if you read Teshnet, I think Teshnet is misread. I think it actually says that intent, knowledge, or motive is immaterial. It doesn't really say anything about voluntariness, does it? No, but there was a great citation, I think, that was employed by learned counsel that came from a Supreme Court case that was cited in Teshnet. So it seemed to have some facial application. So I'm just trying to point out why it's distinguishable. It doesn't even discuss automatism in any way, shape, or form. Be that as it may, we have a Second District case, Martino, well past the 1979 endpoint of Teshnet that does discuss the Voluntary Act, repeats with authority what Grant says, repeats that 4-1 of the Criminal Code says exactly that. And as we all know, the court is not trying to look into a statute to create exceptions, modifications, limitations that aren't there. So you had an expert in your favor. The essence of your argument is we produced an expert who said the act of the defendant driving this case was not voluntary, correct? Yes. And you asked for an instruction on that. Yes. And you didn't get it. No, I did not. Okay. In fact, interestingly, the my learned counsel cites to People v. Worth and People v. Dunnegan, both in support of his argument, but in both cases the trial court gave the Voluntary Act instruction. So even the cases he cites in an attempt to defeat my appeal actually include the Voluntary Act instruction that we sought to have here in our case. Now, was not the argument raised below by the State that this was an absolute liability offense? Well, they use the word absolute. It seems to be better than strict. I don't know the difference, but absolute liability is a mental state. And there is no, I've never seen an absolute liability case in the state of Illinois that defeats the concept of a Voluntary Act. So if it's a, I don't know how far absolute goes, Judge. Absolute is, although it shouldn't be 100% is really on a sliding scale. If it's absolute liability, then I guess no trial is needed because it's absolute liability. Well, I'm going to be asking. In a scientific sense. If absolute liability excludes the affirmative defenses of duress or necessity. I would say not because necessity, in my opinion, also deals with the act in a different way. I really wouldn't want to engage in too much of a philosophical discussion of where necessity falls. You could also throw in a trap in too. Well, my point was here. They wish to basically exclude the Voluntary Act applies. So I put out a couple of examples of how that would be ridiculous. For example, the fraternity brother who takes one of his passed out college roommates, puts them in the car, starts and calls the police as a prank. That person would be guilty of a DUI if there was no such thing as a Voluntary Act. A person who is ordered by the police to get in the car and move it, which was a case I think called People v. Johnson actually out of the Forest Preserve, where the person was actually suspended at the time. That person would be guilty too because the act, whether involuntary or not, would no longer be relevant. There is a Voluntary Act. There are reasons why there is a Voluntary Act. Now, if this was just a factual question, where the jury had a chance to reject it, maybe this wouldn't have gone my way. I don't think so, frankly. I believe that my case is overwhelming in terms of establishing there was no Voluntary Act, and so as a part of my appeal, I've also sought for this court to simply reverse the conviction outright. There was no competing evidence in this regard. This isn't even in dispute. This is an amazing factual record because no one doubted the expert's opinion. No one effectively cross-examined the expert's opinion. So if we didn't reverse outright, then obviously you'd be asking us to remand it. Reverse or remand for a new trial, right? No, I want a reversal outright. But if we didn't grant your outright reversal, if we don't choose option A, option B would have to be a remand, correct? Option B would be dismissive based on perjured testimony, and the only person who testified, the defendant, was under the influence. Well, let's talk about that. You said perjured testimony. Was there ever any finding in the trial court that the officer committed perjury or lied under oath? He was not the defendant in this case. He should have been in another case. But in this case, there was no finding that we could engraft a ruling in that the trial court found or somebody found that the officer lied, right? Yes, but I don't believe the court has the ability to make a finding in that setting. So I admit the judgment did not find he committed perjury, but I'd offer you what the definition would be. Well, here's the problem that I'm running into with that argument. As you all know, the credibility and weight to be given to any testimony is a matter for the trial effect, okay, which in this case was a jury. I take a learner counsel and impeach the officer. Learner counsel pointed out and argued there was inconsistencies. Clearly, you say it's perjurious. Obviously, it was made the argument the officer is not credible, he lied, et cetera. The jury apparently didn't go along with that argument because they found the defendant guilty, right? So how do we get away from the general rule that we don't substitute our judgment for that of the trial effect on credibility issues? So how do you accede to your position without violating that rule? Because the due process clause trumps the argument that only the jury considers the credibility of a witness. If a witness gets on the stand and lies, commits perjury, due process requires that our justice system interrupt the proceeding. Are you saying the judge should interrupt the proceeding sua sponte? This is up to the decision the state has to make in terms of whether they prosecute somebody for perjury. Isn't that correct? A prosecutor would be the person who would, whether it be a special prosecutor, the attorney general, or the same people that actually obtained a guilty plea based on this officer's lies. My first impression of the banter that's gone back and forth is that there's a qualification to what you've said, and that is that when you start talking about perjury testimony, it's not whether the officer perjured himself. It's whether, in addition thereto, the state knew the officer perjured himself and used the perjury testimony knowingly to obtain the conviction. That is the violation, or at least my understanding of the violation, that you seem to be claiming and raising. So would you either agree, disagree, or cite to some different authority from what I've just observed? Judge, I believe that under some authority that I cited, I think it was in the concept of a 214.01 petition, they indicated that even the unknowing use of false testimony could be the basis for vacating a conviction if it was false. And maybe the term false is something that maybe is politically more acceptable and veracity. I don't know if I have to say it was perjury. Let's just say these were diametrically, factually opposing statements that were made by the officer in the same case without any explanation for why these two can coexist. And again, it was argued to the jury, though. Is it possible that the officer took Ambien as well that night? He certainly seemed to have as great a recall of the true events as my client in that regard. No, but to address the testimony of the officer was in the same proceeding, and the prosecutors are, one prosecutor's knowledge of what was said in court is imputed to the trial prosecutor. They can't just use the ostrich defense to say, I wasn't the prosecutor that heard the sworn testimony at the motion to suppress. Therefore, I have no obligation. There's a transcript. There was a transcript in court, obviously, that was used by myself to impeach the officer, which I understand. But when someone testifies about diametrically, factually untrue statements of a material nature, such as what happened here, the court has an obligation to protect the due process interests of the defendant. Where and when that takes place, whether it happens post-trial or post-conviction proceeding, 214.01, or do they interrupt it immediately? I don't think they interrupt it immediately. That would seem a little bizarre, but I would say they have to remedy the situation. A defendant's entitled to remedy when it's obvious. Somebody either made up an HGM test during the first hearing in front of one judge who really had a problem with that officer's testimony, or made up a story on the back end during a trial, and both can't coexist. Did you present any evidence relative to whether or not there was information in the non-professional world or on the Internet or any place that your client could possibly have found out that Ambien causes automatism, such that he could have fabricated the statement that he was taking Ambien during the interrogation or one of the interrogations? In other words, what I'm getting at, did you present any evidence as to whether or not your client could have an interest or a belief that by stating that he was using Ambien that he was actually setting up this defense? All right. To answer it very specifically, did I independently investigate whether that was possible or not? No. But how would I explain that the fabrication is unlikely? Well, there's a case called people being benign about people can make up acid reflux as a defense to a breathalyzer. It was a concern of the Supreme Court, and they said if somebody's diagnosed with it beforehand, that should be enough to allay the post-occurrence making up of some excuse for failing a blood test. Let's use that same example here. The defendant, Mr. Thomas, told, according to the testimony at trial, told the paramedics he was taking Ambien at the scene and also told the hospital personnel, and it's in his hospital records, that he was taking Ambien. There was also a prescription record that the expert reviewed to show that he not only had been prescribed Ambien before the occurrence, but proof that he had filled his prescription three days prior to the occurrence. All of those things happen where it's unlikely that the defendant, in this bizarre state described by at least one of the, at least the officer, was on his smartphone trying to figure out what to do and fabricate. I don't think that's fabricated materials. I do have one quick question. On your argument that the judge improperly instructed the jury on the blood alcohol conversion, let me ask you a point of question. Looking at what the undisputed test result was, and if you properly apply the conversion rate as I'm doing the math here, he still would have been over the legal limit, 0.8, would you have not? Even giving him the benefit of the doubt that it was calculated on. Using pure math, yes, but his hematocrit ratio was abnormal, which implies that even applying the 1.18 was inappropriate in the case according to the pharmacologist who testified. Was there any testimony that it should have been divided by two or three? I mean, what would be the corrected rate given his hematocrit ratio? Well, let's put it another way. Justice Hudson has suggested that there's no harm no foul if you adopt the 1.18 division. There has to be a number, a threshold number, where your client's prejudice, where supposedly the number will take it below 0.08. So if you work, if you use algebra and you have two knowns and one unknown, you can figure it out. So the point is, is that what is that number and would your claim that his level was at that level, would that have given us that number such that you can establish prejudice? In other words, Justice Hudson has raised an interesting point. Where's the prejudice involved in this? Because it went from 15 down to 13 instead of going from 15 down to 0.079. Dr. O'Donnell stated that the appropriate range of hematocrit ratios is reported in the literature to be 1.09 to up to 1.5. That would take a 0.15 or 150 number and would reduce it to either by 10% or 50%. 50% being the benefit of the doubt for the defendant would bring him to roughly 0.10, still above the legal limit. But the test was 90 minutes after he was driving, and according to the testimony, he had consumed one bottle of wine, which clearly leaves him in the potential of having a rising BAC at the time he was driving, and as we know under People v. Floyd, all of that being the case, it would leave a potential reasonable doubt that he was a 0.08 at the time of operating the vehicle. I see what you're saying. Simple math, yes, you'd have to consider would be, but if you consider any other factors, the time delay, whether it's going up or down, you're saying simple math doesn't really answer the question. Right. Okay. Thank you, Your Honor. Thank you. You have an opportunity for rebuttal. Yes, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. My name is Randy Busenica. I'll be arguing on behalf of the people in this matter. Defendant's asking for a C change in DUI criminal law. There's no other way to say that. Asking for a what? A C change. A departure from criminal law. A seismic shift, right? Yeah, that hasn't happened in the years the DUI statute's been in effect. Okay, you have our attention. Why is he doing that? How is he doing that? He's asking, number one, to engraft an element onto the fence that must be proved by the people. That's not in the statute. That defendant drove voluntarily. Two of the jury instructions he proposed said that we were required to prove that he drove voluntarily. Is it not an element, as he says, a material element of every offense under the code? In the criminal code, there's a section that says that, but this is a vehicle offense, Your Honor. It's a DUI, and DUI is the only strict liability offense, criminal offense, I know of. Is there a case that you can point us to? Maybe this is novel and unique. Is there a case that stands for the proposition you've just argued? That DUI is unique? No, that voluntariness can never be an issue in a DUI prosecution. If that's what you're saying. Other than the foreign jurist? Are you talking about Illinois? Illinois, yes. There are no cases, and that's why I'm saying this is a C change. It's never happened before. I can only assume that it's been brought up and rejected for that reason. What he's actually trying to do is raise a voluntary intoxication defense, a voluntary intoxication from a substance that would have supported a separate charge. He's not quite doing that, and the reason why he's not quite doing that is because you haven't presented any evidence that the defendant knew that taking Ambien would cause intoxication or autonomism. That wouldn't happen until either he becomes a doctor, a pharmacologist, a genius who spends a lot of time studying the effects of Ambien, or he gets an FDA notice on his prescription container that tells him that it might cause sleep driving. Which has been around since 2007. That exact notice has been around since 2007. Ours tells us that. Ours tells us that? The case, unfortunately, that you only got the first page of. Those warnings have been around since 2007 that Ambien causes sleep driving, that specific warning. Okay. And these warnings, they were conveyed to the defendant how? Your Honor, there's absolutely no competent evidence in the record about that at all, about whether he took Ambien, about whether he had a prescription for Ambien, about if he got any warnings about what Ambien may cause. There's just no evidence in this record on that. Well, I thought counsel said that at the trial there was evidence that there was a doctor who had prescribed Ambien and that there was evidence that he had the prescription filled. The only evidence came in through defendant's expert who's testifying about this automatism defense, and it's all hearsay. It can't be admitted for the truth of the matter asserted. It can only be admitted to show the basis for the expert opinion. I've cited those cases in my brief, Your Honor. Those are directly on point. I would like to get to the point that I indicated I was going to ask you, which was if it's strict or absolute liability, then entrapment, necessity, duress have no basis in a DUI court. Is that your position? That's a question outside the parameters of this case, so I haven't really formulated an opinion about that. I don't know why they would be unavailable. You said it's strict liability. Mental state is irrelevant. Well, that doesn't mean you can't proffer a defense. Well, he was trying to proffer a defense. Without any competent evidence to support it. He had an expert saying he was in a stupor, automatism is his defense. According to hearsay. It can't be any – I don't know how much – The expert's testimony was focused on the drug and the effects of the drug, correct? Yes. And you're saying that what he testified to as to what the defendant told him was the basis for his opinion, not evidence in this case. Not evidence that actually occurred, of course. I mean, that's evidence 101. I mean, I don't – that's as simple as it can be. If he claimed that he was in the car having an epileptic fit and a police officer saw the problem and smelled alcohol in his breath, even though he was having this fit, as I understand it, the fact that he was having an epileptic fit and that was the reason why he was in the car was because either someone placed him there or he was trying to get to the hospital to have it treated is irrelevant because he wasn't imbibing and he was in the car under control or the car was under its control. Is that what you're telling me? No, no, not at all, Your Honor. I'm not saying that you can't raise other defenses. I'm saying you can't raise – You can't raise automatism is what you're saying. Yes, and there are cases directly on point in Illinois that says automatism is only available if you have an organic impairment such as epilepsy. Drug-induced impairment doesn't count. Do you consider automatism the same thing as involuntary intoxication? Automatism is acting unconsciously, acting involuntarily, whether it's the driving or the imbibing. So, yes, yes. Let me back you up a second. Did you say that drug-induced automatism is not a defense in Illinois? No, I apologize. Drug-induced automatism is the only basis to get an automatism instruction. You have to have an organic impairment under Grant, the case defendant cites Worth and Dunnigan in order to get an automatism instruction. It has to be an organic impairment. For instance, an organic brain condition that causes you to sleepwalk. In other words, if you take a drug and it causes sleepwalking, that's not available. But if you have a defective brain that results in sleepwalking, that is an available defense. That's what the case in Illinois says, and I don't see any reason – Well, how does that – you exclude the possibility. How does somebody know that they have this problem until the first time it happens? Let's say there is a drug on the market. Nobody knows the effects of it. It happens. Are you saying it's not available because you didn't have a previously diagnosed impairment? Well, I'm saying that's not – that may or may not be the case, but that's an issue that need not be reached by this court because there's no evidence about this defendant's Ambien consumption that's confident. There is none. He had to get on the stand and testify. I took Ambien. I didn't get the warnings. I didn't know it could happen. That's the kind of evidence that would support this instruction. And you're saying there was no evidence? There was none. The only person who testified was the expert. His – and I'm not saying the defendant had to testify. I mean, obviously, he has the right to choose not to testify. His wife can come in and testify. I saw him take the Ambien, or better yet, put the prescription bottle into evidence and show that there's no warning on it. That didn't happen. The expert relied on the actual paper prescription, but it's not admitted into evidence. We don't know what warnings were on there. Under Wilson v. Clark, does all of the foundational information for the expert's opinion have to be admissible? No, no, Your Honor. It could be admissible for the basis of their opinion, and that's why it was admissible here. Okay, so? So, you know, perhaps this defendant has a claim for ineffective assistance, the counsel on post conviction, for not putting forth evidence to support the defense. Was this objection raised or this argument raised in the trial court? The trial court made the ruling, Your Honor. I didn't ask you that. I asked you, did the state make the same argument that you're raising on appeal here? That there was no competent evidence? Yes. We did not make the argument before the court made that ruling. The court made the ruling. Then how do you know that the court made the ruling on an argument that wasn't raised? Well, because he said it. He said there is no competent evidence to support this instruction. When I cited this on page 1052 to 1054 of the record, he goes through all the things that the expert testified to that weren't admitted as substantive evidence. They were admitted to show the basis for the expert's opinion. He goes through all of them. And, Your Honor, if you're asking if we could have objected, at the time the expert's testifying, we know that this hearsay is admissible for the purpose of supporting his position. So we have no basis to object. And then at the jury conference, his jury instructions that would have been supported by this evidence were denied. So we have the issue never became vital for us to object to it. And by the time he had it, it was moot because the instructions were already denied. And the court said it. This is not my language.  But this is the trial court's rationale. Well, the fact that you weren't allowed to do certain things doesn't necessarily impact breaches of rights or privileges that the defendant might have. In other words, things can prejudice a defendant that should not have prejudiced a defendant that could be caused by something other than activity or inactivity by the State. Sure. I don't see that here anywhere else. I mean, he's going to argue, Mr. Ramsdell's going to argue that we waived our objection to it being hearsay because we didn't say objection hearsay. I mean, but the purpose behind the waiver doctrine is to give the trial court the opportunity to correct an error when it occurs. And the trial court didn't commit an error. The trial court even acknowledged it didn't commit an error. So the whole policy behind the waiver doctrine is not present here. How would you categorize, label, or define the inconsistencies, contradictions, paradoxes of the testimony of the police officer and relate it to his credibility? My word. Defense counsel accused our assistants of supporting perjury. There's no polite way to say that. I read that. So there's no fighting to support that. But he's pointing out that it's so egregious, it's tantamount to that. More than that, we didn't elicit the testimony about the modified HTN test. Mr. Ramsdell did. So how could we be supporting perjury for evidence we didn't even elicit? Mr. Ramsdell elicited it. I mean, it bothers my mind that he would have the audacity to accuse us of supporting perjury for something he elicited. I understand your argument to be that when you have a police officer who testifies in the state's case in chief, did he not? We're talking about the suppression hearing. So it was in Mr. Ramsdell's case. He has to make the prima facie case for suppression. Let me say it again. Did Officer Northrop, I think that's his name, right? Yes. Did he testify at the trial of his defendant? He did. When the defendant was convicted by a jury? Yes. And was his testimony relevant and material and competent at that time? Yes. And did he make any prior statements under oath at any other proceeding related to this proceeding? He did. This trial? And you're telling me that the state is unaware of the inconsistencies, contradiction, paradoxes at the time they tried the case? Supporting perjury is knowingly putting on perjury testimony, asking the question knowing the witness is going to lie. That's supporting perjury. Well, first off, you haven't answered my question. There were so many here, Your Honor. I didn't ask you about whether the state was supporting perjury. I was asking you about the credibility of the testimony. I apologize, Your Honor. I asked you to characterize the quality of the mercy that came down from heaven unstrained upon this defendant. I apologize. I apologize. The credibility was argued to the jury, who was the arbiter of credibility. The time between the suppression period and the trial was two and a half years. There may be things that are inconsistent. In any event, that was pointed out and argued to the jury, right? Yes. Now, I'm a little bit intrigued. I want to go back to your point about you sat there, or the prosecutor sat there, let the expert's testimony get elicited. It comes in, nobody says anything, and then later on you're saying, well, this wasn't competent because the foundational evidence wasn't proper. How do you then take up the jury's time, you present this expert, and then say, it's not admissible, it's not worth anything? That seems to be what you're saying. No, it was admissible to show the basis of opinion. Okay, but it shouldn't be given the basis for instruction again because of what? Well, because it's not, it can't be offered for the proof of the matter asserted, that this defendant had a prescription for Ambien, because he only got that from the defendant, that this defendant took Ambien on the night in question. He only got that hearsay from the defendant. So those aspects of the testimony which were necessary to support this defense weren't presented via competent evidence at this trial. Like I said, he had a testifier, his wife had a testifier, someone had a testifier. So his statement to the EMTs who were treating him and to the hospital that he was taking Ambien is totally discredited. It's hearsay. That came in through the expert too? I believe it came in through the expert. The expert said it's in the reports. But his statement at the suppression hearing to Deputy Northrup was, Deputy Northrup asked him on the scene, do you take any prescription medication? He says no. They go back. I thought the question was, are you taking any illegal drugs? All those questions were asked. Negative response. No, no. He was also asked, are you taking any prescription drugs? And he says no at the scene. He gets transported to the hospital, and he's in passing, without even asking the question, he says to Deputy Northrup, I take Ambien. He didn't say, I took Ambien, I took Ambien tonight, I took it an hour ago. I mean, under the defendant's theory, he wouldn't remember this anyway because he's unconscious, you know, at this point. He wouldn't remember any of this. Did he only say it to the officer, or did he say it to any medical personnel at the hospital? Like I said, it wound up to be in the medical records that the expert relied on, but those medical records were not in the report. Those are based on your statement. Yeah. Any other questions? No. Thank you. All right, thank you. Just very quickly, it was the cross examination by the prosecutor that drew out literally all the facts about the defendant taking the Ambien. Frankly, having tried the case, if you look at pages 872 to 910, which is the state's cross examination, that's where it comes out that the defendant had a prescription, that it was filled three days before, that he had told the paramedics about it, that he was in the hospital records. They brought that out. So he testified he came out under all sorts of traps. Yeah, by cross examination. That's what I didn't call the defendant. Excuse me. That was a winner. Of the expert? Yes. Why wasn't this the basis for his opinion as opposed to independent evidence and testimony? I put in what I felt was necessary for the basis of his opinion. I did not put in all the things that I anticipated I would have to put my client on the stand for about when he took it and how he filled his prescription. But when the state stepped on it and drew it all out in cross examination, I rested. I got everything in without ever having to put the defendant on the stand. Well, was there any emotion to admit that for substantive evidence? In other words? He came in without objection. They can't object to their own question. They would avoid that. They didn't move to strike the answer on the basis that it was hearsay. Right, because they sought the questions. And so why do I need to put Mr. Donaldson on the stand? That was a winner to me. And I'm pretty confident in my trial skills that once it came in without objection, it was entitled to all the value it was worth. And, frankly, coming in through my expert was better than me risking putting my client on the stand. So, boom, didn't call Mr. Thomas after that. Equally true, there's a misstatement here. In 2007, the FDA notified doctors and pharmacists of the sleep-driving problem because they're learned intermediaries. They did not require that the person taking the pill get a notice. And they didn't require it be put in the product insert or on the pill bottle. It wasn't until 2013, according to Dr. O'Donnell and the FDA advisory he referred to, that the pill bottles and the actual person taking the pill also received that warning. That was a one-year post-occurrence that it came down. So if you look at ARS, you'll see that in 2013, the factual discussion in ARS is that by then, the pill bottles had the warnings. So even if you were to rule in my favor on this ambient issue, all the cases after 2013, the state now has their built-in defense that there's a warning on the pill bottle. So we're really not even talking about anything other than Mr. Thomas. And then finally, when we say there's not another case that happened, you know, the appellate tribunal is a stilted body of law when it comes to criminal law because none of the not-guilties get up here. It's not a measurement of how many people are wrong. So you're saying we're a stilted body, Mr. Randolph? Yeah, well, you see all the lawsuits. You should see October. They're not stilted. All of the people that won on an ambient defense aren't here for you. We can't say this never happened before. I didn't make it up out of old cloth, but trust me on that. I'd like to take credit for that. But you just don't hear about the not-guilties where the voluntary act is actually given and a jury returns an NG. I don't want to discuss anecdotally what happens, but this isn't a first. And it might be the first time that a judge denied a voluntary act instruction in an ambient defense case. That much we know here. But I wouldn't say that we measure historical facts by how many cases reach the appellate court. Then, Judge, as far as organic brain disorder, that's a made-up exception, if you will, that came out of an intermediate appellate court from the first district. It's not what the Supreme Court said. It's to all offenses. They didn't limit automatism or voluntary acts to organic brain disorders. Is sleep inorganic brain disorder? Hypnosis? In that case, what was the defect? Was it inorganic or organic brain? In the Grant case? In the Grant case, Judge, I think... Let me just double-check my notes here. I don't want to mistake about their homing. I don't honestly recall off the top of my head. I didn't make a note on what the Grant case was. I know that a subsequent bill would... I find it intriguing that you can differentiate between involuntary acts based upon whether or not your brain is defective or whether or not there is something that has caused your brain to be defective that you weren't apprised would create that situation. I think there's traumatic brain disorder as well. And what if a mother takes a drug that causes brain disorder to the child? That's a drug-induced brain disorder. It dawned on me that possibly... Some people don't remember, but there was a drug called thalidomide that caused some egregious birth defects. And if I were to accept the State's argument, I think those women could be prosecuted for child neglect, feticide and fantaside, or causing egregious bodily harm to their babies on the basis that it was a voluntary act that they took the thalidomide. Any other questions, Counselor? No. Pardon me. Thank you. Colleagues. Thank you. The case will be taken under advisement after a short recess.